**ORIGINAL**

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

APR 1 7 2015

CHRISTOPHER A. PRINE

CLERK_____

NO. 01-15-00119

---

# APPELLANT'S OPENING BRIEF

---

## IN THE
## TEXAS COURT OF APPEALS
## FIRST DISTRICT

---

## CHARLES MANDEVILLE, V
Appellant

vs.

## DEBORAH MANDEVILLE
Appellee.

---

## APPEAL FROM THE 387TH DISTRICT COURT

---

April 2015

Charles Mandeville, V
1323 Sunset Lane
Guymon, OK 73942
(505) 417-9933
Appellant Pro Se

## PARTIES

Charles Mandeville, V
1323 Sunset Lane
Guymon, OK 73942
(Pro Se)

Deborah Mandeville (Crowley),
represented by:
Vicki L. Pinak
Pinak Law Firm, PLLC
12946 S. Dairy Ashford Road, Ste. 400
Sugar Land, TX 77478

# TABLE OF CONTENTS

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1.   The District Court Abused Its Discretion By Excluding A Post-Martial Separate Property Agreement From the Jury Where The Exclusion Was The Result of An Unnoticed Discovery Motion That Was Not Made Until The Eve of Trial, And The Issues Within The Motion Were Being Raised For The First Time.. . . . . 7

2.   The District Court Abused Its Authority By Imposing On Appellant Supervised-Only Visitation For Seeing Any Of His Children When No Such Request Was Even Made In Any Pleading, And No Grounds At All Were Stated For Seeking Any Deviation From The Standard Possession Order. . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES:

*Boateng v. Trailblazer Health Enters., L.L.C.*, 171 S.W.3d 481 (Tex. App. Houston [14th Dist.] 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex. 1975) . . . . . . . . . . . . . . . . . . . . 10

*Fanning v. Fanning*, 828 S.W.2d 135 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goetz v. Goetz*, 534 S.W.2d 716 (Tex.Civ.App.-Dallas 1976) . . . . . . . . . . . . . . . 10

ii

## STATEMENT OF THE CASE

This is a divorce case that was initiated January 17, 2014 by appellee Deborah Mandeville (Crowley). (CR 8)[1] After Appellant Charles Mandeville Answered the petition, he filed a counter-petition for divorce March 21, 2014 which demanded a jury trial. (CR 30). After Answering the counter-petition, Appellee Deborah submitted a Second Amended divorce petition in August 2014. (CR 123). After entry of several interim and temporary orders, the case was set for trial and tried by a jury October 22, 2014. (CR 321 - 327). A final decree of divorce was entered November 12, 2014. (CR 377). Appellant filed a Motion for New Trial December 12, 2014. (CR 443).[2] When no action was taken on the motion, the notice of appeal was filed February 10, 2015, within the 60 day period allowed from the new trial motion filing date. (CR 515).

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes all issues will be sufficiently set forth in the briefs, and no oral argument may be necessary.

---

[1] 'CR' refers to the Clerk's Record and page number.

[2] The clerk's record incorrectly shows a date of December 24, 2014. Appellant has previously submitted a letter requesting correction of the incorrect date.

1

## ISSUES PRESENTED FOR REVIEW

1. Did The District Court Abuse Its Discretion By Excluding A Separate Property Agreement From the Jury As a Result of An Unnoticed Discovery Motion (Disguised Inside a Motion in Limine) That Was Not Made Until The Eve of Trial, And The Issues Within The Discovery Motion Were Being Raised For The First Time?

2. Did The District Court Err In Deviating From The Standard Possession Order And Imposing On Appellant Supervised-Only Visitation For Seeing Any Of His Children When No Such Request Was Even Made In Any Pleading, And No Grounds Were Stated At All For Making Any Deviation?

## RELEVANT FACTS

The parties to this case were married in New Mexico in June 2000. (CR 9 and 30). On June 25, 2001, and while still in New Mexico, they executed an agreement that transmuted community property to separate property under New Mexico law. (CR 30). The document expressly states that each spouse "divests [him or her] from any right, interest, or claim [each] may have in, or to, any community property", including wages and income of any sort 'that was acquired by the parties own labor and/or initiative' at least from the date of execution and forward. This document was recorded in the Socorro County, New Mexico records on July 20, 2001. (Id). Prior to this divorce proceeding, no attempt was ever made by either party to alter/amend this document. [No such claim in appellee's responses to counter-petition].[3]

---

[3] The parties eventually moved away from New Mexico, and were living in Illinois (a non-community property state). In February 2013 appellant moved to Oklahoma for a job, and expected his then-wife to join him after the school year was over for the children.

(continued...)

2

Appellee Charles filed a counter-petition in response to the initial Petition filed. The counter-petition alleged the existence of, and provided a copy of, the separate property agreement. (CR 30). In response to the counter-petition, Deborah submitted a 'Supplemental Amended Answer' alleging denial of a valid separate property agreement, fraud in the inducement, unconscionableness, lack of fair and reasonable disclosure, vagueness, and breach of the agreement by Charles. (CR 184). The trial court never considered or ruled on any of the separate property agreement issues. And (for reasons described below) although the jury was never allowed to see the agreement, it was nonetheless asked whether appellant Charles had committed the sort of fraud alleged in the 'Supplemental Amended Answer'. It ultimately answered 'no'. (CR 358-360).

At a pre-trial conference just prior to the trial starting, for the first time ever, appellee's counsel handed appellant a 'motion in limine'. (CR 319). Among other things in this last minute surprise was an unnoticed motion concerning vaguely described discovery issues. It sought exclusion of specific items of evidence, which included the 13 year old separate property agreement that had been executed by the parties. (CR 319) Although this portion of the motion did not even comply with the

---

[3](...continued)

Since then, appellant's domicile has been in Oklahoma. He has not been a resident of, and has had nothing to do with Texas. It was only after appellee Deborah fled to Texas from Illinois that she began this divorce proceeding.

3

general Texas Rules of Civil Procedure or the trial court's own local rules regarding discovery disputes,[4] the trial court considered and granted the motion anyway, excluding the 13 year old agreement from the jury. (CR 337).

Other than appellant's retirement accounts, the sole property at issue was personal property already held in the respective party's possession, and separate personal bank accounts. There was no real estate, no investments, and no joint accounts of any sort. The existence of de facto separate property was also reflected in the trial court's own ultimate 'Division of Martial Estate' portion of the Final Decree of Divorce. (See CR 377). The only meaningful property change that occurred was appellee Deborah being awarded 100% of appellant's retirement accounts (with no explanation for this grossly unequal division, even assuming this could have been subject to a community property claim). There was no other

---

[4] T.R.Civ.P. 215.1 requires "reasonable notice to other parties" for any discovery dispute to be heard. It could hardly be considered 'reasonable notice' for someone to hand an opposing party a discovery motion (or anything containing a discovery dispute) as that party is walking into the courtroom for purposes of a hearing on that motion. In addition, the trial court's own Local Rules require at least 10 days notice for motions (See L.R. 3.3.3) and any discovery sanction related motions must contain the exact text of the both the discovery request and response within the motion itself (See L.R. 3.3.6). Instead of following these rules, Petitioner's counsel decided to side-step them and couch these matters within a 'Motion in Limine' (something not even mentioned in any rule of procedure), and the Court went along with this. But since specific rules exist regarding discovery disputes/sanctions, those rules would exclusively govern (see T.R.Civ.P. 2) instead of some undefined, catch-anything-else, motion in limine. Since the above rules were not followed, the Court should not have even entertained opposing counsel's discovery dispute via its slick side-step of the specific rules regarding this type of dispute.

substantive change in either party's property rights.

Without any explanation, the trial court also deviated from the child standard possession order in the Final Decree of Divorce and imposed on appellant supervised only visitation for seeing any of his children. (CR 381-383). This is so even though no grounds were stated for seeking this deviation from the standard order. (CR 125). Moreover, the only condition ever requested in any petition was supervised visitation if appellant would be "in possession of all of the children at the same time".

On December 12, 2014, within 30 days of the filing of the Final Decree, appellant filed his Motion for New Trial which argued (1) the discovery ruling was abusive since (i) the discovery issues (masquerading inside the Motion In Limine) had been raised too late and should not have even been considered at all, (ii) even if they could have been considered, the exclusion sanction was excessive/abusive, and (2) no support existed for deviating from the child standard possession order. (CR 443).

## SUMMARY OF ARGUMENT

The trial court seriously abused its discretion by even entertaining an alleged discovery dispute (which was masquerading under the name 'Motion in Limine') concerning discovery issues that were only being raised for the first time on the eve of trial (and did not comply with the general and local rule requirements for noticed discovery motions). It has been held more than once that a party waives any

5

discovery dispute when they wait until the last minute to present it.

But to make matters worse, the court went from making a completely initial determination about the dispute, by-passed any (initial) order (to compel responses), any lesser sanction if the order to compel was not obeyed, and went straight to an exclusion sanction. The Supreme Court has held this sort of action to unquestionably be abusive. The exclusion also seriously invaded the province of the jury to decide what may be separate property. It also took from the jury the question of the validity of the agreement — an issue that had been raised by appellee herself. After effectively removing the separate property agreement decision from the jury, the trial court then proceeded to simply ignore the entire matter in its Final Decree.

Next, the trial court should not have deviated from the standard possession order for child custody. No grounds were even stated in appellee's Second Amended Petition for making any such deviation. Moreover, the trial court even went beyond any request from appellee for the deviation. While appellee's petition only sought supervised visitation on appellant when he had possession of 'all of the children at the same time', the court issued a supervised-only visitation restriction on appellant regardless of the number of children he might possess. Since deviating from the standard possession order is questionable enough in itself, certainly going beyond what a party might request for a deviation cannot stand up.

For these reasons, the trial court's exclusion order should be reversed/vacated,

6

along with its decision to award appellee the entirety of appellant's retirement accounts. The order imposing on appellant supervised-only possession of his children should also be vacated.

## ARGUMENT[5]

1.     The District Court Abused Its Discretion By Excluding A Post-Martial Separate Property Agreement From the Jury Where The Exclusion Was The Result of An Unnoticed Discovery Motion That Was Not Made Until The Eve of Trial, And The Issues Within The Motion Were Being Raised For The First Time.

Paragraph 4 of the purported 'Motion In Limine' refers to a purported 'failure to respond to the interrogatory request requiring each item of separate property to be identified.' Paragraph 5 refers to a 'Request For Production that was not timely produced'. Based on these vague references to purported discovery misconduct by appellant, the motion sought to exclude any reference to any 'specific item, bank account, or retirement account as being [appellant's] separate property'. The motion did not (and could not) refer to any prior Order for any such disclosure or 'inventory' since none existed.[6] Nor did any prior discovery order exist that addressed the

---

[5] Since appellant's motion for new trial raised the issues presented in this appeal, that motion preserved these issues. *Boateng v. Trailblazer Health Enters., L.L.C.*, 171 S.W.3d 481, 491 (Tex. App. Houston [14th Dist.] 2005 (holding parties preserved error where they filed a motion for new trial after the trial court retroactively converted a preliminary hearing into a trial on the merits); *Rudisell v. Paquette*, 89 S.W.3d 233, 236 (Tex.App.—Corpus Christi 2002, no pet.) (appellant preserved his issue regarding lack of particularity in the sanctions order by filing a motion for new trial which detailed issues).

[6] It should be noted that there is no general, standing, statutory requirement for

(continued...)

specific discovery issues that were being raised. So opposing trial counsel waited until the eve of trial to bring up the discovery issue, and the discovery sanction sought right out of the gate was an exclusion order on key evidence, without any prior determination that a discovery violation even existed or any order compelling responses. Nonetheless, based on this, the trial court ruled that appellant:

> "shall not mention or refer to a specific item, bank account, or retirement account, as being his separate property as CHARLES MANDEVILLE, V, failed to respond to the Interrogatory request requiring him to identify and state the value of each item he claims is his separate property." (CR 338).

Appellant was therefore barred by this order from making any reference to the fact that separate property might exist, much less to the separate property agreement since it specifically listed these types of items.

As an initial matter, appellant would point out that courts have held that a party who does not obtain an order compelling discovery responses, and waits until the eve of trial to complain about discovery issues has waived them. *Mandell v.*

---

[6](...continued)
making any pre-trial 'inventory' of separate property. In fact, the term 'inventory' only appears one place in the entire Family Code (§ 6.502). This statute addresses 'Temporary Injunction and Other Temporary Orders'. No such order was ever issued in this case. Moreover, cases exist where separate property was determined by reference to the separate property agreement alone, without any 'inventory'. *Williams v. Williams*, 720 S.W.2d 246, 248-249 (Tex.App.-Hous. (14 Dist.) 1986) (trial court correctly characterized items as separate property since they were "by definition in the agreement"; no separate 'inventory' even mentioned in case); *Fanning v. Fanning*, 828 S.W.2d 135, (Tex.App.-Waco 1992) (judgment reversed where trial court failed to enforce separate property agreement, and divided property contrary to agreement; separate property was listed in agreement; no separate 'inventory' even mentioned in case).

8

*Mandell*, 214 S.W.3d 682, 691-692 (Tex.App.-Houston [14th Dist.] 2007) (evidence exclusion claim waived where no prior order compelling discovery, and party waited until eve of trial to file discovery sanction motion). Based on this alone, the trial court should have disregarded *any* initial complaints about discovery on the eve of trial. But even if it could/ should have considered the complaints, the sanction it imposed was abusive.

In discussing discovery sanctions in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (1991) the Texas supreme court held that a sanction "should be no more severe than necessary to satisfy its legitimate purpose", and that a court must "consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance". *Id*, at 917. The court when on to state that 'trial by sanctions' is not justified, and a sanction which is so severe as to "preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules". *Id* at 918. After noting nothing in the record of that case showed any consideration by the trial court of any lesser sanction, the supreme court held the trial court abused its discretion in imposing a sanction that resulted in dismissal of the claim.

In this case, the trial court's imposition of the exclusion sanction plainly precluded presentation of the merits of the case regarding separate property, and

9

effectively resulted in a default on that issue by appellant. But, just as in *Trans-American Natural Gas,* there is nothing in the record which shows any attempt at any lesser sanction by the trial court. Moreover, there is not even anything in the record of the motion (or hearing) which showed any 'flagrant bad faith' on appellant's part. The discovery issues opposing counsel raised were essentially being raised *for the first time,* and therefore the motion had to be seeking an *initial* determination of whether any discovery violation had even occurred *at all* (and it all only occurred on the eve of trial). To jump from making an initial determination of a discovery violation occurring to the immediate imposition of an exclusion sanction is leaping a huge chasm, and would not stand up under the test of *TransAmerican Natural Gas.*

This would be especially true where a jury right is involved. In divorce cases, when a proper jury demand is made, it is the jury's exclusive province to determine what may be separate or community property, and reversible error if all relevant disputed facts are not submitted to the jury. *Goetz v. Goetz,* 534 S.W.2d 716, 718 (Tex.Civ.App.-Dallas 1976) (reversing decision where pertinent property facts excluded from jury). A court must also abide by the jury's determination of separate and community property in any property division. See *Cockerham v. Cockerham,* 527 S.W.2d 162, 173 (Tex. 1975) ("Though the trial court has wide discretion in dividing the property of the spouses as it feels just and in disregarding advisory answers of the jury, it may not ignore the jury's answers which extend to issues of

10

fact from which the status of property is determined.")

This issue gets even more ridiculous when: (1) consideration is given to the fact that the *very validity* of the separate property agreement was *specifically* put in dispute by appellee Deborah's own Answer to the Counter-Petition, and (2) the jury was specifically asked whether appellant had committed acts that might invalidate the agreement. Despite these circumstances, the jury was precluded from seeing the agreement itself. That, of course, is senseless by itself. But it gets 'better'! After the trial, the trial court then summarily ignored the issues about the agreement that had been specifically raised by appellant in his counter-petition, and appellee Deborah's own 'Supplemental' Answer to the Counter-Petition. It just summarily rendered a Final Decree without even mentioning the separate property agreement issue.

Given the above circumstances, and the absolute right of a jury to determine the character of the property involved, it was an abuse of the trial court's discretion to summarily exclude a key agreement that long ago declared the separate property intentions of the parties. This agreement, and listing of property items within it, was known by *everyone* long before any trial, was plainly a factor in any determination concerning the character of any property, and its application was an issue for the jury to decide. By excluding it, the trial court improperly invaded the province of the jury.

But even beyond this, the trial court then proceeded to summarily ignore issues

11

concerning the validity of separate property agreement that appellee Deborah herself had put at issue. All these issues were raised in appellant's Motion For New Trial, which the trial court simply ignored. Clearly, all the above presents reversible error.

2.    The District Court Abused Its Authority By Imposing On Appellant Supervised-Only Visitation For Seeing Any Of His Children When No Such Request Was Even Made In Any Pleading, And No Grounds At All Were Stated For Seeking Any Deviation From The Standard Possession Order.

In the Final Decree of Divorce the Court appointed appellant as a parent possessory conservator of the children. But despite this appointment, the Court issued a modified possession order which imposed supervised-only visitation on him for seeing any of his children. (CR 341). No grounds are stated in the Order for this modification. The only thing ever requested in any petition was supervised visitation if appellant would be "in possession of all of the children at the same time" (CR 125), and no amendment of this requests exists. Moreover, no grounds were alleged for even this requested modification. (Id).

The Texas Family Code §153.252(a)-(b) includes a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child for a parent named as possessory conservator or joint managing conservator" and "is in the best interest of the child." A party seeking a deviation from the standard possession order has the burden to establish that the modification is in the best interest of the child. *Prause v. Wilder*, 820 S.W.2d 386, 387 (Tex. App. 1991). Since a party seeking the deviation has this burden, they would clearly have the

12

obligation of making allegations in their petition to satisfy that burden. See, e.g. *Smith v. Aramark Corporation*, 13-11-00500-CV (Tex.App.-Corpus Christi 7-31-2014) p. 7 (party's failure to make allegations in pleadings against presumption contrary to their position provided no evidence to overcome presumption); *In re Sullender*, 12-12-00058-CV (Tex.App.-Tyler 7-11-2012), p. 4 (failure to make appropriate allegations against presumption in favor of opposing party fails to overcome presumption).

Here, although a standard possession order modification was requested in appellee's amended petition, no grounds whatsoever were alleged for any such modification. This alone should have resulted in the failure to state a claim for any modification; and no modification allowed. The trial court abused its authority by issuing a modification anyway when no grounds were even alleged for it.

But even beyond the above, the only modification requested was supervised visitation if and when appellant might be in possession of *all* the children at the same time. The trial court nonetheless went beyond that and imposed unconditional supervised visitation on appellant, regardless of the number of children he may have. Since no such request was ever even made, the trial court abused its authority for imposing the supervised-only condition it did for appellant to see his children. Therefore, the portion of the Final Decree imposing supervised-only visitation should be reversed/vacated, and the matter remanded for a different order regarding

13

child possession.

## CONCLUSION

For the foregoing reasons, the portion of the district court's Final Decree awarding appellant's retirement accounts to appellee should be reversed/ vacated. The supervised-only visitation/possession restriction imposed on appellant to visit and/ or possess his children should also be vacated. Appellant should also be awarded his costs for this appeal.

Submitted by,

Charles Mandeville, V
Appellant In Pro Per

## CERTIFICATE OF COMPLIANCE

In accordance with T.R.A.P. 9.4, it is hereby certified that the foregoing content consists of less than 4000 words.

14

# APPENDIX INDEX

Community Property Declaration and Agreement……………………………………..-6

Order On Motion in Limine…………………………………...…………………………1

Jury Instructions…………………………………………………………………………3

Charge of Court / Verdict Form……………………………………………………...9

Final Decree of Divorce……………………………………………………………...19

## CERTIFICATE OF SERVICE

It is hereby certified that on the below date a copy of the foregoing document were served on the following by depositing the same in a sealed envelope in the United States mail with postage prepaid and addressed as follows:

Vicki L. Pinak
Pinak Law Firm, PLLC
12946 S. Dairy Ashford Road, Ste. 400
Sugar Land, TX 77478

(Counsel for Deborah Mandeville (Crowley))

Date: April 14, 2015

# APPENDIX

Community Property
Declaration
&
Agreement

Recording Requested By

When Recorded Mail to:

FILED FOR RECORD
COUNTY OF SOCORRO
STATE OF NEW MEXICO
AT _____ O'CLOCK _____ M
8:56
JUL 2 0 2001    A        Book 501 Page 2847

BK 501 PG 2847-2853

AUDREY JARAMILLO - CLERK

Space Above This Line For Recorder's Use

## COMMUNITY PROPERTY DECLARATION AND AGREEMENT

### Parties

The parties to this agreement are Charles Mandeville, V, paternal spouse, and Deborah M. Mandeville, maternal spouse, husband and wife, who on June 10, 2000, in the State of New Mexico executed the vows of matrimony.

### Intent of the Parties at Time of Marriage

It is the intent of both parties, prior to, at the time of marriage and forever, signatory hereto on the above date of marriage to live harmoniously together for their life time consistent with the common law.

### Present Intent of the Parties

It has come to the attention of both parties that the Laws of the State of New Mexico will attempt to circumvent the intent of the parties at the time of marriage, and it is by way of this Community Property Declaration and Agreement that the parties signatory hereto will, to this extent, maintain control over their personal lives and property absent the interference of state community property laws.

It is the intent of this agreement that each party herein delineates, defines and clearly expresses each and the other's interest in the community property of the other, as defined by the Laws of the State of New Mexico, which have been and will continue to be acquired prior to and/or during the marriage of the parties.

This agreement is voluntarily made, entered into, joined in, accepted by, and consented to by both husband and wife without reservation. Both husband and wife have not been coerced, threatened, intimidated or influenced in any manner whatsoever that would clearly express or imply that this agreement has not been executed voluntarily and without duress.

This agreement is entered into with respect to NMSA 40-3-1, et al., of the New Mexico statutes, and with respect to NMSA Section 40-3-8, which provides that classes of property are as follows:

"A. 'Separate Property' means:

(5) Property designated as separate property by a written agreement between the spouses, including a deed or other written agreement concerning property held by the spouses as joint tenants or tenants in common in which the property is designated as separate property."

*Prop/Agreement*                                    1                                    -6

Both of the above named spouse's community property interests will be adversely affected by this agreement. Therefore both spouses are the adverse parties to this agreement.

## Intent to Divest and Transmute Community Property

In that it has been determined that for the intent of the marriage consummated between the parties, to be properly adhered to, that Deborah M. Mandeville, wife, voluntarily divest herself of any right, interest, or claim she may have to, or in, any community property considered interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and all realty and personal vehicles which Charles Mandeville, V acquired by and through his own labor and/or initiative which Deborah M. Mandeville, wife, may have acquired by and through the marriage of Charles Mandeville, V and Deborah M. Mandeville on June 10, 2000. Deborah M. Mandeville further divests herself of any community property interest she may acquire in any future interest income, stocks, bonds, dividends, wages, income, rental income and/or all other earnings, and all realty and personal vehicles which Charles Mandeville, V may acquire by and through his own labor and/or initiative.

Additionally it is the intent of Deborah M. Mandeville, wife, to transmute such property from the status of community property to the status of separate and personal property of Charles Mandeville, V, husband.

In that it has been determined that for the intent of the marriage consummated between the parties, to be properly adhered to, that Charles Mandeville, V, husband, voluntarily divest himself of any right, interest, or claim he may have to, or in, any community property considered interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and all realty and personal vehicles which Deborah M. Mandeville acquired by and through her own labor and\or initiative which Charles Mandeville, V, husband, may have acquired by and through the marriage of Charles Mandeville, V and Deborah M. Mandeville on June 10, 2000. Charles Mandeville, V further divests himself of any community property interest he may acquire in any future interest income, stocks, bonds, dividends, wages, income, rental income and/or all other earnings, and all realty and personal vehicles which Deborah M. Mandeville may acquire by and through her own labor and/or initiative.

Additionally, it is the intent of Charles Mandeville, V, husband, to transmute said property from the status of community property to the status of separate and personal property of Deborah M. Mandeville, wife.

## Divestiture and Transmutation of Community Property

That Deborah M. Mandeville hereby, voluntarily and without reservation, conveys to her husband as the personal and separate property of Charles Mandeville, V, and thereby divests from herself any right, interest or claim to, or in, the community property as set forth herein, effective from the date of this agreement and forward; and that all interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and realty and personal vehicles which Charles Mandeville, V acquired by and through his own labor and/or initiative, is now and forever hereafter transmuted from the status of community property to the separate and distinct personal property of Charles Mandeville, V, disposable by him without the consent of and recourse to the adverse spouse.

That Charles Mandeville, V hereby, voluntarily and without reservation, conveys to his wife as the personal and separate property of Deborah M. Mandeville and thereby divests from himself any right,

interest or claim to, or in, the community property as set forth herein, effective from the date of this agreement and forward; and that all interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and realty and personal vehicles which Deborah M. Mandeville acquired by and through her own labor and/or initiative, is now and forever hereafter transmuted from the status of community property to the status of the separate and distinct personal property of Deborah M. Mandeville, disposable by her without the consent of and recourse to the adverse spouse.

### Express Property Exclusions

All other property not included within the confines of the above section is considered exclusive of this agreement as herein set forth. This includes, and is limited to, realty held in joint tenancy and/or joint tenancy in common, or in any other manner, other than in the individual name of the maternal or paternal spouse, as the case may be, which would subject said realty to the community property laws; family vehicles, wearing apparel, gifts, or any other tangible or intangible items otherwise considered statutory community property or the separate property of the maternal/paternal adverse spouse, as the case may be.

This section does not serve to prohibit the maternal/paternal adverse spouse, as the case may be, from exercising, at a later date, any right to convey to either adverse spouse, or divest from either adverse spouse, the property excluded by this section. Any modification of this agreement shall be set forth in writing, signed and dated by the respective spouses, and attached to the original agreement. If necessary, any modification shall be recorded with the county recorder's office as required by law.

### Implied Property Inclusion

All other property not expressly listed in the above section as a specific property exclusion is considered included, by implication, in the Divestiture and Transmutation clauses of this agreement, and is hereby transmuted to the personal and separate property of the spouses, divested by the maternal/paternal adverse spouse and conveyed to the maternal/paternal adverse spouse, as the case may be, as their own separate and personal property, including, but not limited to, tax deferred annuities, IRA's, savings accounts and all other property not expressly set forth within the Express Property Exclusions clause.

### Common Law Obligation of Paternal Spouse - Defined

It is understood that Charles Mandeville, V has a Common Law duty and obligation to provide for his wife, children, and other dependents, and to support them, clothe them, feed them, shelter them and generally provide for the necessities of life and for their well-being pursuant to the customs of the Common Law.

Such obligation shall not be interpreted as the conveyance by Charles Mandeville, V, husband, to Deborah M. Mandeville, wife, or the acceptance by her of community property rights regarding interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and realty and personal vehicles of Charles Mandeville, V, acquired by and through his own labor and/or initiative as set forth herein.

### Liability of Adverse Spouse, Deborah M. Mandeville.

Any liabilities incurred by the adverse spouse, Deborah M. Mandeville, will be satisfied first from the personal property of Deborah M. Mandeville, and then from the community property estate, if any, of

the parties signatory hereto as set forth above, consistent with the community property laws of the State of New Mexico.

Deborah M. Mandeville will be solely responsible for satisfying any liabilities, whatsoever, incurred against, or by receipt of any interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, realty and personal vehicles of Deborah M. Mandeville acquired by and through her own labor and/or initiative.

## Liability of Paternal Spouse, Charles Mandeville, V

Any liabilities incurred by the adverse spouse, Charles Mandeville, V, will be satisfied first from the personal property of Charles Mandeville, V, and then from the community property estate, if any, of the parties signatory hereto as set forth above, consistent with the community property laws of the State of New Mexico.

Charles Mandeville, V will be solely responsible for satisfying any liabilities, whatsoever, incurred against, or by receipt of any interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and realty and personal vehicles of himself acquired by and through his own labor and/or initiative.

## Husband's Control of Personal Property

Charles Mandeville, V will have exclusive control over his own personal and separate property, including, but not limited to, interest income, stocks, bonds, dividends, wages, income, rental income, and other earnings received, and realty and personal vehicles to dispose of as he deems proper without the consent of, and without recourse to Deborah M. Mandeville.

## Wife's Control of Personal Property

Deborah M. Mandeville will have exclusive control over her own personal and separate property, including, but not limited to, tax deferred annuities, IRA's, savings accounts, interest income, stocks, bonds, dividends, wages, income, rental income, and other earnings received, and realty and personal vehicles to dispose of as she deems proper without the consent of, and without recourse to Charles Mandeville, V.

## Bank Accounts

Charles Mandeville, V shall have a separate bank account for his separate and personal funds, should a bank account be desired, which the adverse party hereto will neither have access to nor be signatory thereon. Bank account includes any type of account offered by commercial and/or private banks.

Deborah M. Mandeville shall have a separate bank account for her separate and personal funds, should a bank account be desired, which the adverse party hereto will neither have access to nor be signatory thereon. Bank account includes any type of account offered by commercial and/or private banks.

Should a joint bank CHECKING account be desirable for purposes of paying the marital support obligations incurred by the paternal spouse, as herein before stated, that is to say, support of the familial necessities, said account shall neither be interpreted nor construed to be an abrogation of this agreement relative to the intent of the specific transmutation of property between the spouses.

*Prop/Agreement*  4



## Commingling of Separate and Community Property

The parties signatory hereto agree that there will be no commingling of their separate property with the community property of the marital estate. Any incidental or inadvertent commingling of property shall not serve to nullify the intent of this agreement, unless and until it can conclusively be shown by either spouse, or a third party, that such commingling of property was not incidental or inadvertent and was done so as to achieve favorable consideration for either of the parties signatory hereto, with the consent and knowledge of the other party, with respect to the community property laws of the State of New Mexico and contrary to the intent of this agreement.

Commingling of funds shall not include nor be interpreted as establishment of a joint bank account between the parties to pay for familial necessities.

Furthermore, it is understood, that supplying the maternal adverse party hereto, with funds to pay necessary family living expenses and to provide food, clothing and shelter for the family and the dependents thereof, and providing for the same a comfortable manner of living within the means of Charles Mandeville, V shall not constitute, expressly or by implication, the commingling of separate and community property.

## Divorce

Should either party hereto institute and complete divorce proceedings as against the other party, this agreement is binding for those proceedings, and the interest income, stocks, bonds, dividends, wages, income, rental income, and other earnings, realty and personal vehicles of Charles Mandeville, V acquired by and through his own labor and/or initiative, shall be recognized as his separate and personal property for said divorce proceedings, for which neither the wife nor any third party shall have any claim to as community property, for satisfaction of community property debts, the wife's personal debts or for any other reason, excepting the personal debts of Charles Mandeville, V, which will be satisfied consistent with the terms and conditions of this agreement and the prevailing New Mexico State Law in existence at the time this agreement is entered into by, and between the parties signatory hereto.

Should either party hereto institute and complete divorce proceedings as against the other party, this agreement is binding for those proceedings, and the tax deferred annuities, IRA's, interest income, stocks, bonds, dividends, wages, income, rental income, and other earnings, realty and personal vehicles of Deborah M. Mandeville acquired by and through her own labor and/or initiative, shall be recognized as her separate and personal property for said divorce proceedings, for which neither the husband nor any third party shall have any claim to as community property, for satisfaction of community property debts, the husband's personal debts or for any other reason, excepting the personal debts of Deborah M. Mandeville, which will be satisfied consistent with the terms and conditions of this agreement.

## Death of Paternal Spouse, Charles Mandeville, V

Upon the death of Charles Mandeville, V, and in the absence of divorce proceedings prior to death, all separate personal property herein set forth above in the Divestiture and Transmutation of Community Property section, and subsequent sections governing inclusion of property by implication shall automatically revert to the adverse party of this agreement, Deborah M. Mandeville.

This section shall not be construed to include the personal liabilities, if any, of Charles Mandeville, V, upon his death, acquired prior to the death of Charles Mandeville, V, and/or prior to the marriage of Charles Mandeville, V and Deborah M. Mandeville.

In the event that New Mexico State law, whether it be the common law, statutory law, or decisional law requires assumption of the personal liabilities of Charles Mandeville, V, upon acceptance and receipt of his separate property by Deborah M. Mandeville, as provided herein, Deborah M. Mandeville reserves the right to waive acceptance and receipt of any or all of the separate property of Charles Mandeville, V.

This paragraph is inoperative as to any wills, inter vivos trusts or any other document or vehicle which is established by Charles Mandeville, V, which would otherwise serve to convey his separate property to a party other than Deborah M. Mandeville.

### Death of Maternal Spouse, Deborah M. Mandeville

Upon the death of Deborah M. Mandeville, and in the absence of divorce proceedings prior to death, all separate personal property herein set forth above in the Divestiture and Transmutation of Community Property section, and subsequent sections governing inclusion of property by implication shall automatically revert to the adverse party of this agreement, Charles Mandeville, V.

This section shall not be construed to include the personal liabilities, if any, of Deborah M. Mandeville, upon her death, acquired prior to the death of Deborah M. Mandeville and/or prior to the marriage of Deborah M. Mandeville.

In the event that New Mexico State law, whether it be the common law, statutory law, or decisional law requires assumption of the personal liabilities of Deborah M. Mandeville upon acceptance and receipt of her separate property by Charles Mandeville, V, as provided herein, Charles Mandeville, V reserves the right to waive acceptance and receipt of any or all of the separate property of Deborah M. Mandeville.

This paragraph is inoperative as to any wills, inter vivos trusts or any other document or vehicle which is established by Deborah M. Mandeville which would otherwise serve to convey her separate property to a party other than Charles Mandeville, V.

### Merger and Construction

This Contract sets forth the entire understanding and agreement of the parties and may be modified only by an agreement in writing executed by the parties hereto. All negotiations are merged into this Contract. This Contract shall not be construed against the party preparing it, but shall be construed as if both parties prepared the Contract. The paragraph headings used herein are for convenience only and do not form a portion of this Contract. This contract shall be construed and interpreted pursuant to and under the common law, statutory law, and decisional law of the State of New Mexico.

### Severability Of Provisions

In the event that any provision of this contract conflicts with any applicable law, or if any provision is held invalid by a court with jurisdiction over the parties to this contract, such provision or part thereof shall be deemed deleted, ordered replaced or renegotiated in this contract, but the remainder of the contract shall remain in full force and effect.



## Agreement Binding

This agreement is binding on both parties, signatory hereto, and cannot be modified or dissolved without the express written consent of both parties.

## Effective Date of Agreement

This agreement shall be deemed effective, by oral agreement, the date the marriage between the parties is consummated, regardless and irrespective of the date this Contract is formally executed; the oral agreement being subject to the statute of frauds.

Witness our hands this 25th day of June 2001

Deborah M Mandeville
Deborah M. Mandeville, Wife
Maternal Adverse Spouse

Charles Mandeville/V, Husband
Paternal Adverse Spouse

1396 NE Alex Way
Address

1396 NE Alex Way
Address

Hillsboro OR 97124
City, State, Zip

Hillsboro, OR 97124
City, State, Zip

On this 25 day of June, in the year 2001 before me, Peggy A Glaze, a Notary Public, State of ~~New Mexico~~ Oregon, duly commissioned and sworn, personally appeared, Mr. Charles Mandeville, V and Deborah M. Mandeville known to me, or proven to me on satisfactory evidence to be the person whose names are subscribed to the within instrument, and acknowledge the same.

IN WITNESS THEREOF I have hereunto set my hand and affixed my official seal.

Peggy A. Glaze
Notary Public, State of ~~New Mexico~~ Oregon
My commission expires on: 4-10-04



OFFICIAL SEAL
PEGGY A. GLAZE
NOTARY PUBLIC-OREGON
COMMISSION NO. 333520
MY COMMISSION EXPIRES APRIL 10, 2004

O

Order On
Motion
in
Limine

Filed
10/20/2014 4:39:12 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Herlinda Nanez

NO. 14-DCV-211809

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| DEBORAH MANDEVILLE | § | 387TH JUDICIAL DISTRICT |
| AND | § | |
| CHARLES MANDEVILLE, V | § | |
| | § | |
| AND IN THE INTEREST OF | § | FORT BEND COUNTY, TEXAS |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

### ORDER ON MOTION IN LIMINE

On October 17, 2014, the Court heard the Motion in Limine filed by Counsel for DEBORAH MANDEVILLE. After considering such Motion and hearing arguments by CHARLES MANDEVILLE, V, pro se, and Counsel for DEBORAH MANDEVILLE, the Court determined that the following Orders should be issued:

1. IT IS THEREFORE ORDERED that CHARLES MANDEVILLE, V, pro se, and Counsel for DEBORAH MANDEVILLE shall not mention, refer to, or bring before the jury, directly or indirectly, on voir dire examination, reading of the pleadings, statement of the case, interrogation of the witnesses, argument, objections before the jury, or in any other manner any of the matters enumerated below, unless and until the matters have first been called to the Court's attention out of the presence and hearing of the jury and a favorable ruling received on the admissibility and relevance of the matters.

2. IT IS ORDERED that CHARLES MANDEVILLE, V, pro se, shall not mention any adultery, cruelty, or other acts of fault in disrupting the marital relationship as there are no pleadings by CHARLES MANDEVILLE, V to support such a claim.

1

3. IT IS ORDERED that CHARLES MANDEVILLE, V, pro se, shall not mention any evidence of the character reputation, or quality of, or the fees for, legal services rendered by counsel for DEBORAH MANDEVILLE.

4. IT IS ORDERED that CHARLES MANDEVILLE, V, pro se, shall not mention or refer to a specific item, bank account, or retirement account, as being his separate property as CHARLES MANDEVILLE, V, failed to respond to the Interrogatory request requiring him to identify and state the value of each item he claims is his separate property.

5. IT IS ORDERED that CHARLES MANDEVILLE, V, pro se, shall not mention or refer to or show the jury, or offer any exhibit that was requested in DEBORAH MANDEVILLE'S Request for Production that was not timely produced by CHARLES MANDEVILLE, V.

6. IT IS ORDERED that CHARLES MANDEVILLE, V, pro se, shall not mention or refer to the fact that a Motion for Partial Summary Judgment was denied by the Court.

7. IT IS ORDERED that CHARLES MANDEVILLE, V, pro se, shall not mention or refer to any terms, discussions or evidence relating to settlement negotiations or settlement offers relating to the issues in this case.

Granted in open Court on October 17, 2014
And entered this _21_ day of October, 2014.


_____
JUDGE BRENDA MULLINIX

2

Jury Instructions

Filed
10/20/2014 4:39:12 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Herlinda Nanez

NO. 14-DCV-211809

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| DEBORAH MANDEVILLE | § | 387TH JUDICIAL DISTRICT |
| AND | § | |
| CHARLES MANDEVILLE, V | § | |
| | § | |
| AND IN THE INTEREST OF | § | FORT BEND COUNTY, TEXAS |
| ████████████████████ | § | |
| | § | |
| | § | |
| | § | |

**Instruction to Jury Panel before Voir Dire Examination**

MEMBERS OF THE JURY PANEL:

Thank you for being here. We are here to select a jury. Twelve of you will be chosen for the jury. Even if you are not chosen for the jury, you are performing a valuable service that is your right and duty as a citizen of a free country.

Before we begin: Turn off all phones and other electronic devices. While you are in the courtroom, do not communicate with anyone through any electronic device. For example, do not communicate by phone, text message, email message, chat room, blog, or social networking websites such as Facebook, Twitter, Instagram, etc. I will give you a number where others may contact you in case of an emergency. Do not post information about the case on the Internet before these court proceedings end and you are released from jury duty. Do not record or photograph any part of these court proceedings, because it is prohibited by law.

If you are chosen for the jury, your role as jurors will be to decide the disputed facts in this case. My role will be to ensure that this case is tried in accordance with the rules of law.

Here is some background about this case. This is a case involving a Divorce and Custody issues between DEBORAH MANDEVILLE and CHARLES MANDEVILLE, V. Representing the petitioner is Vicki L. Pinak, and respondent is representing himself. They will ask you some questions during jury selection. But before their questions begin, I must give you some instructions for jury selection.

Every juror must obey these instructions. You may be called into court to testify about any violations of theses instructions. If you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and parties' money, and would require the taxpayers of this county to pay for another trial.

3

These are the instructions.

1. To avoid looking like you are friendly with one side of the case, do not mingle or talk with the lawyer, witnesses, parties, or anyone else involved in the case. You may exchange casual greetings like "hello" and "good morning." Other than that, do not talk with them at all. They have to follow these instructions too, so you should not be offended when they follow the instructions.

2. Do not accept any favors from the lawyers, witnesses, parties, or anyone involved in the case, and do not do any favors for them. This includes favors such as giving rides and food.

3. Do not discuss this case with anyone, even your spouse or a friend, either in person or by other means, including by phone, text message, email message, chat room, blog, or social networking websites such as Facebook, Twitter, or Instagram. Do not allow anyone to discuss the case with you or in your hearing. If anyone tries to discuss the case with you or in your hearing, tell me immediately. We do not want you to be influenced by something other than the evidence admitted in court.

4. Vicki L. Pinak and CHARLES MANDEVILLE, V, have the right to ask you questions about your background, experiences and attitudes. They are not trying to meddle in your affairs. They are just being thorough and trying to choose fair jurors who do not have any bias or prejudice in this particular case.

5. Remember that you took an oath that you will tell the truth, so be truthful when the lawyers ask you questions, and always give complete answers. If you do not answer a question that applies to you, that violates your oath. Sometimes a lawyer will ask a question of the whole panel instead of just one person. If the question applies to you, raise your hand and keep it raised until you are called on.

6. Do not investigate this case on your own. For example, do not:

   a. try to get information about the case, lawyers, witnesses, or issues from outside this courtroom;
   b. go to places mentioned in the case it inspect the places;
   c. inspect items mentioned in this case unless they are presented as evidence in court;
   d. look anything up in a law book, dictionary, or public record to try to learn more about the case;
   e. look anything up on the Internet to try to learn more about the case; or
   f. let anyone else do any of these things for you.

This rule is very important because we want a trial based only on evidence presented in open court. Your conclusions about this case must be based only on what you see and hear in this courtroom because the law does not permit you to base your conclusions on information that has not been presented to you in open court. All the information must be presented in open court so the parties and their lawyers can test it and object to it. Information from other

4

sources, like the Internet, will not go through this important process in the courtroom. In addition, information from other sources could be completely unreliable. As a result, if you investigate this case on your own, you could compromise the fairness to all parties in this case and jeopardize the results of this trial.

Do you understand these instructions? If not, please let me know now.



Filed
10/20/2014 4:39:12 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Herlinda Nanez

## NO. 14-DCV-211809

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| DEBORAH MANDEVILLE | § | 387TH JUDICIAL DISTRICT |
| AND | § | |
| CHARLES MANDEVILLE, V | § | |
| | § | |
| AND IN THE INTEREST OF | § | FORT BEND COUNTY, TEXAS |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

### Instructions to Jury after Jury Selection

### Oral Instructions

MEMBERS OF THE JURY:

You have been chosen to serve on this jury. Because of the oath you have taken and your selection for the jury, you become officials of this court and active participants in our justice system.

You have each received a set of written instructions. I am going to read them with you now. Some of them you have heard before and some are new.

1. Turn off all phones and other electronic devices. While you are in the courtroom and while you are deliberating, do not communicate with anyone through any electronic device. For example, do not communicate by phone, text message, email message, chat room, blog, or social networking websites such as Facebook, Twitter, or Instagram. I will give you a number where others may contact you in case of emergency. Do not post information about the case on the Internet before these court proceedings end and you are released from jury duty. Do not record or photograph any part of these court proceedings, because it is prohibited by law.

2. To avoid looking like you are friendly with one side of the case, do not mingle or talk with the lawyers, witnesses, parties, or anyone else involved in the case. You may exchange casual greetings like "hello" and "good morning." Other than that, do not talk with them at all. They have to follow these instructions too, so you should not be offended when they follow the instructions.

3. Do not accept any favors from the lawyers, witnesses, parties, or anyone else involved in the case, and do not do any favors for them. This includes favors such as giving rides and food.

6

4. Do not discuss this case with anyone, even your spouse or a friend, either in person or by any other means, including by phone, text message, email message, chat room, blog, or social networking websites such as Facebook, Twitter, or Myspace. Do not allow anyone to discuss the case with you or in your hearing. If anyone tries to discuss the case with you or in your hearing, tell me immediately. We do not want you to be influenced by something other than the evidence admitted in court.

5. Do not discuss this case with anyone during the trial, not even with the other jurors, until the end of the trial. You should not discuss the case with your fellow jurors until the end of the trial so that you do not form opinions about the case before you have heard everything.

   After you have heard all the evidence, received all of my instructions, and heard all of the arguments, you will then go to the jury room to discuss the case with the other jurors and reach a verdict.

6. Do not investigate this case on your own. For example, do not:

   a. try to get information about the case, lawyers, witnesses, or issues from outside this courtroom;
   b. go to places mentioned in the case it inspect the places;
   c. inspect items mentioned in this case unless they are presented as evidence in court;
   d. look anything up in a law book, dictionary, or public record to try to learn more about the case;
   e. look anything up on the Internet to try to learn more about the case; or
   f. let anyone else do any of these things for you.

   This rule is very important because we want a trial based only on evidence presented in open court. Your conclusions about this case must be based only on what you see and hear in this courtroom because the law does not permit you to base your conclusions on information that has not been presented to you in open court. All the information must be presented in open court so the parties and their lawyers can test it and object to it. Information from other sources, like the Internet, will not go through this important process in the courtroom. In addition, information from other sources could be completely unreliable. As a result, if you investigate this case on your own, you could compromise the fairness to all parties in this case and jeopardize the results of this trial.

7. Do not tell other jurors of your own experiences or other people's experiences. For example, you may have special knowledge of something in the case, such as business, technical, or professional information. You may even have expert knowledge or opinions, or you may know what happened in this case or another similar case. Do not tell other jurors about it. Telling other jurors about it is wrong because it means the jury will be considering things that were not presented in court.

8. Do not consider attorney's fees unless I tell you to. Do not guess about attorneys' fees.

9. During the trial, if taking notes will help focus your attention on the evidence, you may take notes using the materials the court has provided. Do not use any personal electronic devices to take notes, If taking notes will distract your attention from the evidence, you should not take notes. Your notes are for your own personal use. They are not evidence. Do not show or read your notes to anyone, including other jurors.

You must leave your notes in the jury room or with the bailiff. The bailiff is instructed not to read your notes and to give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone.

You may take your notes back into the jury room and consult them during deliberations. But keep in mind that your notes are not evidence. When you deliberate, each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes. After you complete your deliberations, the bailiff will collect your notes.

When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

10. I will decide matters of law in this case. It is your duty to listen to and consider the evidence and to determine fact issues that I may submit to you at the end of the trial. After you have heard all the evidence, I will give you instructions to follow as you make your decision. The instructions also will have questions for you to answer. You will not be asked and you should not consider which side will win. Instead, you will need to answer the specific questions I give you.

Every juror must obey my instructions. If you do not follow these instructions, you will be guilty of juror misconduct, and I may have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial.

Do you understand these instructions? If you do not, please tell me now.

Please keep these instructions and review them as we go through this case. If anyone does not follow these instructions, tell me.

8

Charge of Court
Verdict Forms



NO. 14-DCV-211809

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| DEBORAH MANDEVILLE | § | 387TH JUDICIAL DISTRICT |
| AND | § | |
| CHARLES MANDEVILLE, V | § | |
| | § | |
| AND IN THE INTEREST OF | § | FORT BEND COUNTY, TEXAS |
| | § | |
| █████████████ | § | |
| | § | |
| | § | |
| | § | |

## Charge of the Court

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by other means. Do not do any independent investigations about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Here are the instructions for answering the questions:

1. Do not let bias, prejudice or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not presented in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

9

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

10. Unless otherwise instructed the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

   As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;

d. write down the answers you agree on;
e. get the signatures for the verdict certificate; and
f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. Unless otherwise instructed you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those ten jurors sign the verdict.

   If eleven jurors agree on every answer, those eleven jurors sign the verdict.

   If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

4. There are some special instructions before each question explaining how to answer those questions. Please follow the instructions. If all twelve of you answer those questions, you will need to complete a second verdict certificate for those questions.

Do you understand these instructions? If you do not, please tell me now.

_Brenda O Mullinix_
JUDGE BRENDA MULLINIX

**FILED**

OCT 2 2 2014

AT _____ 1:44 P. M.

_Annie Rebecca Elliott_

Clerk District Court, Fort Bend Co., TX

11

A divorce may be decreed without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

A divorce may be decreed in favor of one spouse if the other spouse is guilty of cruel treatment toward the complaining spouse of a nature that renders further living together insupportable.

## QUESTION 1

Do grounds exist for divorce between Charles Mandeville, V and Deborah Mandeville as to:

A. insupportability of the marriage between Charles Mandeville, V and Deborah Mandeville?

Answer "Yes" or "No."

Answer: Yes

B. cruel treatment by Charles Mandeville, V toward Deborah Mandeville, if any?

Answer "Yes" or "No."

Answer: No

12

The best interest of the children shall always be the primary consideration in determining questions of conservatorship.

You shall appoint both parents joint managing conservators unless you find that such an appointment is not in the best interest of the children. In making this determination, you shall consider all the following factors:

1. Whether the physical, psychological, or emotional needs and development of the children will benefit from the appointment of joint managing conservators.

2. The ability of the parents to give first priority to the welfare of the children and reach shared decisions in the best interest of the children.

3. Whether each parent can encourage and accept a positive relationship between the children and the other parent.

4. Whether both parents participated in child-rearing before the filing of the suit.

5. The geographical proximity of the parents' residences.

At all times, each parent has the following rights, subject to any limitation imposed by court order:

1. To receive information from any other conservator of the children concerning the health, education, and welfare of each child.

2. To confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of each child.

3. To have access to medical, dental, psychological, and educational records of each child.

4. To consult with a physician, dentist, or psychologist of each child.

5. To consult with school officials concerning each child's welfare and educational status, including school activities.

6. To attend school activities.

7. To be designated on each child's records as a person to be notified in case of an emergency.

8. To consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of each child.

9. To manage the estate of each child to the extent the estate has been created by the parent or the parent's family.

13

During the period that a parent has possession of a child or children, that parent retains the following rights and duties, subject to any limitation imposed by court order:

1. The duty of care, control, protection, and reasonable discipline of each child.

2. The duty to support each child, including providing each child with clothing, food, shelter, and medical and dental care not involving an invasive procedure.

3. The right to consent for each child to medical and dental care not involving an invasive procedure.

4. The right to direct the moral and religious training of each child.

A parent who is not appointed joint managing conservator will be appointed possessory conservator and granted possession of and access to the children under terms and conditions specified by the court.

"Possessory conservator of the children" means the person appointed to have possession of or access to the children at specified times and upon certain conditions. In addition to the rights and duties listed above that a parent named a conservator has at all times or during periods of possession of the child, subject to any limitations imposed by court order on those rights and duties, a parent appointed possessory conservator has any other right or duty of a managing conservator expressly granted to that parent in the decree appointing that parent a possessory conservator.

A parent appointed the sole managing conservator of the children has the following exclusive rights, subject to any limitation imposed by court order:

1.     The right to designate the primary residence of the children.

2.     The right to consent to medical, dental, and surgical treatment involving invasive procedures.

3.     The right to consent to psychiatric and psychological treatment.

4.     The right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child.

5.     The right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child.

6.     The right to consent to marriage and to enlistment in the armed forces of the United States.

7.     The right to make decisions concerning the education of the children.

8.     The right to the services and earnings of the child.

9.     Except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government.

15

## Verdict Certificate

Check one:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          _____
Signature of Presiding Juror                          Printed Name of Presiding Juror

__X___ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | SIGNATURE | NAME PRINTED |
|---|---|---|
| 1. | | Ann Barnes |
| 2. | | Leah Njau |
| 3. | D. Lamberth | Dana Lamberth |
| 4. | | Victor Smith |
| 5. | Ton Lynch | Toni Lynch |
| 6. | Tyler McCutcheon | TYLER McCUTLHEON |
| 7. | Robert L. McCleod | Robert 6. McClendon |
| 8. | Kelsey Junek | Kelsey Junek |
| 9. | Bindu Kalladaf | Bindu Kalladanthyil |
| 10. | Cheryl Wooldridge | CHERYL WOOLRIDGE |
| 11. | | |

18

Final
Decree

14-DCV-211809
FLU
Final Judgment by Jury Verdict

NO. 14-DCV-211809

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| DEBORAH MANDEVILLE | § | 387TH JUDICIAL DISTRICT |
| AND | § | |
| CHARLES MANDEVILLE, V | § | |
| | § | |
| AND IN THE INTEREST OF | § | FORT BEND COUNTY, TEXAS |
| ███████████████ | § | |
| | § | |
| | § | |
| | § | |

## FINAL DECREE OF DIVORCE

On October 21, 2014 Court called this case to trial and a jury was duly accepted, impaneled, and sworn. The trial continued on October 22, 2014. The jury returned its verdict after hearing the evidence, argument, and the Court's instructions.

**Appearances**

DEBORAH MANDEVILLE, appeared in person and through attorney of record, Vicki L. Pinak.

CHARLES MANDEVILLE, V, appeared in person, pro se.

**Record**

The record of the trial was duly reported by Lauren Rainer, the Court Reporter for the 387th Judicial District Court of Fort Bend County, Texas.

**Jurisdiction and Domicile**

The Court finds that the pleadings of DEBORAH MANDEVILLE are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, DEBORAH MANDEVILLE had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation

1

were properly cited.

**Jury**

A jury was selected, questions of fact were submitted to the jury, and a verdict was returned and duly filed.

**Divorce**

IT IS ORDERED AND DECREED that DEBORAH MANDEVILLE and CHARLES MANDEVILLE, V were pronounced divorced on October 22, 2014, and that the marriage between them is dissolved on the ground of insupportability.

**Children of the Marriage**

The Court finds that DEBORAH MANDEVILLE and CHARLES MANDEVILLE, V are the parents of the following children:



The Court finds no other children of the marriage are expected.

20

**Parenting Plan**

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parenting plan established by the Court.

**Conservatorship**

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that DEBORAH MANDEVILLE is appointed Sole Managing Conservator and CHARLES MANDEVILLE is appointed Possessory Conservator of ▮▮▮▮

IT IS ORDERED that, at all times, DEBORAH MANDEVILLE, as a parent sole managing conservator and CHARLES MANDEVILLE as parent possessory conservator, shall have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

5. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6. the right to attend school activities;

7. the right to be designated on the children's records as a person to be notified in case of an emergency;

8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9. the right to manage the estate of the children to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED that, at all times, DEBORAH MANDEVILLE, as parent sole managing conservator and CHARLES MANDEVILLE as parent possessory conservator, shall each have

3

*21*

the following duties:

1. the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2. the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her periods of possession, DEBORAH MANDEVILLE, as parent sole managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that DEBORAH MANDEVILLE, as a parent sole managing conservator, shall have the following exclusive rights and duty:

1. the exclusive right to designate the primary residence of the children without regards to a geographical restriction;

2. the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures;

3. the exclusive right to consent to psychiatric and psychological treatment of the children;

4. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

5. the exclusive right to represent the children in legal action and to make other decisions of

4

substantial legal significance concerning the children:

6.    the exclusive right to consent to marriage and to enlistment in the armed forces of the United States, after consultation with possessory conservator;

7.    the exclusive right to make decisions concerning the children's education;

8.    except as provided by section 264.0111 of the Texas Family Code, the exclusive right to the services and earnings of the children;

9.    except when a guardian of the children's estate or a guardian or attorney ad litem has been appointed for the children, the exclusive right to act as an agent of the children in relation to the children's estate if the children's action is required by a state, the United States, or a foreign government; and

10.    the duty to manage the estate of the children to the extent the estate has been created by community property or the joint property of the parent.

**Possession and Access**

**1.    Modified Possession Order**

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Modified Possession Order. IT IS ORDERED that this Modified Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Modified Possession Order. IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Modified Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.    In this Modified Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

IT IS ORDERED that the conservators shall have possession of the children under the specified terms set out in this Modified Possession Order. Except as otherwise expressly provided in this Modified Possession Order, CHARLES MANDEVILLE, V shall have the right to supervised possession of the children through an agreed upon supervisor that is in writing and signed by the parties and absent agreement such supervised possession shall be through the Harris County, Texas S.A.F.E. program as follows:

IT IS ORDERED AND DECREED that all periods of possession of or access to the

5

23

Except as otherwise expressly provided in this Modified Possession Order, when CHARLES MANDEVILLE, V resides 100 miles or less from the primary residence of the children, CHARLES MANDEVILLE, V shall have the right to possession of the children as follows through the Harris County, Texas Safe program and at the times designated by the Safe program:

1.     Weekends - On weekends, beginning at 9:00 a.m. on the Saturday following the first, third and fifth Friday of each month and ending at noon that same day and beginning at 9:00 a.m. on the Sunday following the first, third and fifth Friday of each month and ending at noon that same day, subject to the provisions relating to supervised visitation through the SAFE program. IT IS ORDERED that CHARLES MANDEVILLE, V shall give DEBORAH MANDEVILLE three (3) days notice if he intends on exercising his periods of possession.

(d)     Parents Who Reside More Than 100 Miles Apart

IT IS ORDERED that each period of possession and access by CHARLES MANDEVILL, V to the children shall be supervised by the S.A.F.E. Program, as stated above and when CHARLES MANDEVILLE, V resides more than 100 miles from the residence of the children, CHARLES MANDEVILLE, V shall have the right to possession of the children as follows:

1.     Weekends - Unless CHARLES MANDEVILLE, V elects the alternative period of weekend possession described in the next paragraph, beginning at 9:00 a.m. on the Saturday following the first, third and fifth Friday of each month and ending at noon that same day and beginning at 9:00 a.m. on the Sunday following the first, third and fifth Friday of each month and ending at noon that same day, subject to the provisions relating to supervised visitation through the SAFE program. IT IS ORDERED that CHARLES MANDEVILLE, V shall give DEBORAH MANDEVILLE three (3) days notice if he intends on exercising his periods of possession.

Alternate Weekend Possession—In lieu of the weekend possession described in the foregoing paragraph, CHARLES MANDEVILLE, V shall have the right to possession of the children not more than one weekend per month of his choice beginning at 9:00 A.M. on Saturday and ending at 5:00 P.M. that same day and beginning at 9:00 a.m. on the Sunday and ending at 5:00 P.M. that same day, subject to the provisions relating to supervised visitation through the SAFE program. CHARLES MANDEVILLE, V may elect an option for this alternative period of weekend possession by giving written notice to DEBORAH MANDEVILLE within ninety days of entry of this Decree. If CHARLES MANDEVILLE, V makes this election, he shall give DEBORAH MANDEVILLE fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day possession below.

(e)     Holidays Unaffected by Distance

IT IS ORDERED that each period of possession and access by CHARLES MANDEVILLE, V to the children shall be supervised by the S.A.F.E. Program as stated above.

7

MANDEVILLE child support of one thousand five hundred ninety-one dollars and two cents ($1,591.02) per month, due and payable on the first day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand five hundred ninety-one dollars and two cents ($1,591.02) due and payable on the first day of each month thereafter until the next occurrence of one of the events specified below for another child:

1. a child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. a child marries;

3. a child dies;

4. the parent-child relationship is terminated based on genetic testing that excludes the obligor as the child's genetic father;

5. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

6. a child's disabilities are otherwise removed for general purposes.

Thereafter, IT IS ORDERED that CHARLES MANDEVILLE, V pay to DEBORAH MANDEVILLE child support of one thousand three hundred twenty-five dollars and eighty-five cents ($1,325.85) per month, due and payable on the first day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand three hundred twenty-five dollars and eighty-five cents ($1,325.85) due and payable on the first day of each month thereafter until the next occurrence of one of the events specified below for another child:

1. a child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. a child marries;

3. a child dies;

4. the parent-child relationship is terminated based on genetic testing that excludes the obligor as the child's genetic father;

5. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

6. a child's disabilities are otherwise removed for general purposes.

Thereafter, IT IS ORDERED that CHARLES MANDEVILLE, V pay to DEBORAH MANDEVILLE child support of one thousand sixty dollars and sixty-eight cents ($1,060.68) per month, due and payable on the first day of the first month immediately following the date of the earliest occurrence of one of the events specified above for another child and a like sum of one thousand sixty dollars and sixty-eight cents ($1,060.68) due and payable on the first day of each

11

month thereafter until the next occurrence of one of the events specified below for another child:

1. a child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. a child marries;

3. a child dies;

4. the parent-child relationship is terminated based on genetic testing that excludes the obligor as the child's genetic father;

5. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

6. a child's disabilities are otherwise removed for general purposes.

If a child is eighteen years of age and has not graduated from high school, IT IS ORDERED that CHARLES MANDEVILLE, V'S obligation to pay child support to DEBORAH MANDEVILLE shall not terminate but shall continue for as long as the child is enrolled-

1. under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2. on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

## Child Support Arrearages

IT IS FOUND, CONFIRMED and ADJUDGED that DEBORAH MANDEVILLE is awarded a judgment against CHARLES MANDEVILLE, V in the amount of five thousand four hundred forty-five dollars and seventy cents ($5,445.70) for child support arrearages from April 2, 2014 through October 17, 2014. This judgment is GRANTED and RENDERED against CHARLES MANDEVILLE, V and in favor of DEBORAH MANDEVILLE including interest at the rate of 6% per annum for let writ of execution issue.

IT IS ORDERED that CHARLES MANDEVILLE, V shall pay to DEBOARH MANDEVILLE two hundred fifty dollars ($250.00) per month toward the child support arrearage judgment with the first payment due and payable on December 1, 2014 and a like payment of two hundred fifty dollars ($250.00) due and payable on the first day of each month thereafter until paid in full.

## Retroactive Child Support

IT IS FOUND, CONFIRMED and ADJUDGED that DEBORAH MANDEVILLE is awarded a judgment against CHARLES MANDEVILLE, V in the amount of five thousand four

12

30

Spousal Support.

**Payment**

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to CHARLES MANDEVILLE, V for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

**Change of Employment**

IT IS FURTHER ORDERED that CHARLES MANDEVILLE, V shall notify this Court and DEBORAH MANDEVILLE by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of CHARLES MANDEVILLE, V and the name and address of his current employer, whenever that information becomes available.

**Clerk's Duties**

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, CHARLES MANDEVILLE, V, DEBORAH MANDEVILLE, or an attorney representing CHARLES MANDEVILLE, V or DEBORAH MANDEVILLE, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

**Health Care**

1.    IT IS ORDERED that CHARLES MANDEVILLE, V and DEBORAH MANDEVILLE shall each provide medical support for the children as set out in this order as additional child support for as long as the Court may order CHARLES MANDEVILLE, V and DEBORAH MANDEVILLE to provide support for the children under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day CHARLES MANDEVILLE, V and DEBORAH MANDEVILLE'S actual or potential obligation to support the children under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that CHARLES MANDEVILLE, V and DEBORAH MANDEVILLE are discharged from the obligations set forth in this medical support order, except for any failure by a parent to fully comply with those obligations before that date.

2.    Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the cost of health insurance coverage for a child that does not

14

32

exceed 9 percent of CHARLES MANDEVILLE, V'S annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:

a. to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b. to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c. to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3. Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the children through CHARLES MANDEVILLE, V'S employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

4. Provision of Health-Care Coverage -

CHARLES MANDEVILLE, V is ORDERED to continue to maintain health insurance for the children who are the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

CHARLES MANDEVILLE, V is ORDERED to maintain such health insurance in full force and effect on the children who is the subject of this suit as long as child support is payable for that child. CHARLES MANDEVILLE, V is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for the children within fifteen days of termination of his employment or other disqualification from the group insurance. CHARLES MANDEVILLE, V is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

15

33

CHARLES MANDEVILLE, V is ORDERED to furnish DEBORAH MANDEVILLE a true and correct copy of the health insurance policy or certification and a schedule of benefits within 15 days of the signing of this order. CHARLES MANDEVILLE, V is ORDERED to furnish DEBORAH MANDEVILLE the insurance cards and any other forms necessary for use of the insurance within 15 days of the signing of this order. CHARLES MANDEVILLE, V is ORDERED to provide, within three days of receipt by her, to DEBORAH MANDEVILLE any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that DEBORAH MANDEVILLE paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if CHARLES MANDEVILLE, V is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of DEBORAH MANDEVILLE or others as authorized by law.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows: DEBORAH MANDEVILLE is ORDERED to pay fifty percent (50%) and CHARLES MANDEVILLE, V is ORDERED to pay fifty percent (50%) of the unreimbursed health-care expenses if, at the time the expenses are incurred, DEBORAH MANDEVILLE is providing health insurance as ordered.

The party who incurs a health-care expense on behalf of the children is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of the children who is the subject of this suit that are incurred while child support is payable for the child.

5. Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6. Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to attempt to use "preferred providers," or services within the

16

health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion of that bill.

7. Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option, may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company. Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, CHARLES MANDEVILLE, V is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of the children to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8. Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of the children shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9. WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

**Miscellaneous Child Support Provisions**

**No Credit for Informal Payments**

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively

17

discharged in the manner ordered and that any direct payments made by CHARLES MANDEVILLE, V to DEBORAH MANDEVILLE or any expenditures incurred by CHARLES MANDEVILLE, V during CHARLES MANDEVILLE, V'S periods of possession of or access to the children, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

## Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of CHARLES MANDEVILLE, V and shall not terminate on the death of CHARLES MANDEVILLE, V. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of CHARLES MANDEVILLE, V'S estate.

## Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of DEBORAH MANDEVILLE to CHARLES MANDEVILLE, V unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

## Information Regarding Parties

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: DEBORAH MANDEVILLE
Social Security number:
Driver's license number:
Current residence address:
Home telephone number:     832-819-8108

Name: CHARLES MANDEVILLE, V
Social Security number:
Driver's license number: Unknown  Issuing state:
Current residence address:
Home telephone number: 505-417-9933
Name of employer: High Plains Biodiesel, a Subsidiary of Seaboard Foods
Address of employment: 3300-32nd Street, Guymon, OK 73942
Work telephone number: 800-262-7907

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN

18

36

INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 301 Jackson Street, Richmond, TX 77469. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY

37

RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

**Division of Marital Estate**

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.

**Property to CHARLES MANDEVILLE, V**

IT IS ORDERED AND DECREED that CHARLES MANDEVILLE, V is awarded the following as his sole and separate property, and DEBORAH MANDEVILLE is divested of all right, title, interest, and claim in and to that property:

H-1. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the CHARLES MANDEVILLE, V or subject to his sole control.

H-2. All clothing, jewelry, and other personal effects in the possession of the CHARLES MANDEVILLE, V or subject to his sole control.

H-3. All sums of cash in the possession of the CHARLES MANDEVILLE, V or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in the First Financial Bank account ending ▮▮▮▮

H-4. The 2011 Volkswagen Jetta motor vehicle, together with all prepaid insurance, keys, and title documents.

H-5. One hundred percent (100%) of the gold and silver coins in the possession of CHARLES MANDEVILLE, V or subject to his sole control.

**Property to DEBORAH MANDEVILLE**

IT IS ORDERED AND DECREED that DEBORAH MANDEVILLE is awarded the following as her sole and separate property, and CHARLES MANDEVILLE, V is divested of all

right, title, interest, and claim in and to that property:

W-1. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the DEBORAH MANDEVILLE or subject to her sole control.

W-2. All clothing, jewelry, and other personal effects in the possession of the DEBORAH MANDEVILLE or subject to her sole control.

W-3. All sums of cash in the possession of the DEBORAH MANDEVILLE or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in the following accounts:

    a. The PNC Bank account ending ███; and
    b. The Bank of America account ending ███

W-4. One hundred percent (100%) of the funds in the Merrill Lynch 401(k) as of October 22, 2014 together with any interest, dividends, gains, or losses on that mount, more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is entered.

W-5. One hundred percent (100%) of the funds in the Fidelity 401(k) as of October 22, 2014 together with any interest, dividends, gains, or losses on that mount, more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is entered.

W-6. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceed therefrom and any other rights related to the following accounts:

    a. The Vanguard Roth IRA; and
    b. The Vanguard Traditional IRA.

**Division of Debt**

**Debts to CHARLES MANDEVILLE, V**

IT IS ORDERED AND DECREED that CHARLES MANDEVILLE, V shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold DEBORAH MANDEVILLE and her property harmless from any failure to so discharge, these items:

H-1. All debts, charges, liabilities, and other obligations incurred solely by CHARLES MANDEVILLE, V, unless express provision is made in this decree to the contrary.

**Debts to DEBORAH MANDEVILLE**

IT IS ORDERED AND DECREED that DEBORAH MANDEVILLE shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold CHARLES MANDEVILLE, V and his property harmless from any failure to so discharge, these items:

W-1. The following debts, charges, liabilities, and obligations:

21

39

a. Sears account ending  and

b. Chase account ending ▮▮▮

W-2. All debts, charges, liabilities, and other obligations incurred solely by DEBORAH MANDEVILLE, unless express provision is made in this decree to the contrary.

## Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

## Separate Property

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of DEBORAH MANDEVILLE:

2006 Kia Sedona automobile VIN: 1G1NE52M1WY163893

Chevy Malibu automobile VIN: KNDMB233066093055

## Injunctive Relief

IT IS ORDERED AND DECREED that DEBORAH MANDEVILLE and CHARLES MANDEVILLE, V are permanently enjoined from:

a. Making disparaging remarks regarding the other party or a family member in the presence or within the hearing of the children; and

b. Allowing a third party to make disparaging remarks regarding the other party or a family member in the presence or within the hearing of the children.

Issuance of the writ of injunction is waived by the Court. IT IS ORDERED that DEBORAH MANDEVILLE and CHARLES MANDEVILLE, V shall be deemed to be duly served with the writ of injunction as announced in open court.

## Attorney's Fees

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

## Treatment/Allocation of Community Income for Year of Divorce

IT IS ORDERED AND DECREED that, for the calendar year 2013; each party shall file an individual income tax return in accordance with the Internal Revenue Code.

## Change of Name

40

IT IS ORDERED AND DECREED that DEBORAH MICHELLE MANDEVILLE'S name is changed to DEBORAH MICHELLE CROWLEY.

**Court Costs**

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

**Withdrawal of Counsel**

IT IS ORDERED that upon finalization and entry of this Agreed Final Decree of Divorce Vicki L. Pinak is discharged as legal counsel for DEBORAH MANDEVILLE.

**Clarifying Orders**

Without affecting the finality of this Agreed Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

**Relief Not Granted**

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

**Date of Judgment**

SIGNED on this 12th day of November, 2014.

_____
JUDGE BRENDA MULLINIX

FILED
NOV 12 2014
AT _____ o'clock __.M.
Clerk District Court, Fort Bend Co., TX

23

41

STANFIELD PRINTING CO #291
580-338-8418
CHARLES MANDEVILLE
322 N MAIN ST
GUYMON OK 73942

**2 LBS**      **1 OF 1**

SHIP ATTN: CHRISTOPHER A PRINE
TO: FIRST COURT OF APPEALS
301 FANNIN STREET
HOUSTON TX 77002-2066

R BROWN S A
(4A-7057)
301 Fa

SHIPPED FOR: CHARLES MANDEVILLE
505-417-9933
BY: STANFIELD PRINTING CO #291



**UPS 2ND DAY AIR**

TRACKING #: 1Z 732 600 02 0012 1790

**TX 775 9-02**



**2**

BILLING: P/P

FIRST COURT OF APPEALS
301 FANNIN ST
HOUSTON TX 77002-2031

R BROWN S A
1ZA 7047B

1Z7326000020012
DVB5QHP    TXHVK278    APR 16 05:05:50 2015
US 7702   HIP 15.3:3   ZEBRAZM400

1790
1:218

PE 15:0 HP-LaserJet Professional P1102w 60.5V 01/2015

